IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| HILL INTERNATIONAL, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 24-00049 |
| | : | |
| VIRGIN ISLANDS PUBLIC FINANCE AUTHORITY, OFFICE OF DISASTER RECOVERY | : : : : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                    **January 2, 2026**

Plaintiff Hill International, Inc. ("Hill") brings a bid protest action against Defendant Virgin Islands Public Finance Authority ("VIPFA") alleging violations of federal and Virgin Islands procurement law. VIPFA filed a Motion to Dismiss against Hill's Complaint on four grounds including lack of standing, failure to serve, failure to exhaust administrative remedies, and failure to state a claim. United States Magistrate Judge G. Alan Teague filed a Report and Recommendation ("R&R") recommending dismissal of Hill's Complaint in its entirety. Hill then filed two objections challenging the dismissal of its claim on standing and failure to state a claim grounds. After de novo review, the Court agrees with Judge Teague's analysis and will adopt the R&R in its entirety. [1]

---

[1] Judge Teague in the R&R did not address VIPFA's exhaustion arguments because it recommended dismissal of the Complaint on other grounds. R&R 34. He also recommended the failure to serve ground be dismissed as moot because VIPFA withdrew this argument. *Id.* at 5, 34; *see also* Def. Reply Mot. to Dismiss 1 n.1, Dkt. No. 72. The Court will likewise not address these issues.

**BACKGROUND**[2]

In March 2024, the Office of Disaster Recovery ("ODR") within VIPFA issued a request for proposals ("RFP") to solicit bid proposals for project management and construction management services to help facilitate federally funded hurricane recovery projects.  Compl. ¶¶ 7, 9-10, Dkt. No. 53-3.  Hill, a project and construction management company, submitted a timely bid on May 23, 2024.  *Id.* ¶¶ 6, 12.  VIPFA through a five-member Evaluation Committee reviewed the bids and eventually awarded a $137 million contract to CH2M for both project management and construction management services.  *Id.* ¶¶ 14-15, 24.

Protesting the award, Hill filed suit against VIPFA on September 10, 2024.[3]  *See generally id.*  Hill alleged VIPFA did not have the statutory authority to commence the procurement for these services and the V.I. Department of Property and Procurement ("P&P") should have administered the RFP and award selection process.  *Id.* ¶ 39.  Hill also alleged it should have been awarded the contract instead of CH2M because VIPFA's actions were arbitrary and capricious by (1) accepting an over $106 million price disparity between the winning bid and Hill's bid; (2) conducting a decisionmaking process that was tainted by a conflict of interest; and (3) awarding a single contract which contravenes the RFP's requirement of at least two awards.  *Id.* ¶ 31.  Hill seeks injunctive relief preventing VIPFA from executing or performing the award contract and declaratory judgment stating the contract should have been awarded to Hill.  *Id.* ¶ i-iv.  On October 3, 2024, VIPFA filed a Motion to Dismiss the entirety of Hill's Complaint.  Dkt. No. 56.

---

[2]     The Court will only provide a brief summary because the parties are familiar with the factual and procedural background of this case based on the various briefings and the R&R.

[3]     While Hill did inquire about the basis of the award to CH2M and requested a debrief meeting, it did not file a bid protest with VIPFA.  Compl. ¶¶ 16-23, 26.

On March 5, 2025, Judge Teague issued a R&R recommending the Court grant in part and deny in part VIPFA's Motion to Dismiss Hill's Complaint.  R&R 1, Dkt. No. 87.  He recommends this Court grant "Defendant's 12(b)(1) motion as to standing and dismiss Plaintiff's procurement power claims for lack of standing;" grant "Defendant's 12(b)(6) motion and [dismiss] Counts I, II, and III for failure to state a claim"; deny "without prejudice Defendant's 12(b)(1) motion as to exhaustion;" and find "Defendant's motion to dismiss under Rule 12(b)(5) for insufficient service of process" is moot.  R&R 34.  On April 18, 2025, Hill timely filed objections to the R&R.  Pl.'s Obj., Dkt. No 93.  VIPFA filed a response to the objections on May 2, 2025 and Hill filed a reply on May 9, 2025.  Dkt. Nos. 94 & 95.  VIPFA's Motion to Dismiss and the R&R are ripe for this Court's review.

## STANDARD

When a party timely objects "to a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'"  *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)); Fed. R. Civ. P. 72(b)(3).  After the district court conducts a de novo review, the "district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

Federal Rule of Civil Procedure 12(b)(1) permits two types of jurisdictional challenges: facial attacks and factual attacks.  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).  A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court" whereas a factual attack contests the truth of the jurisdictional allegations.  *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d

3

Cir. 2018) (internal citation omitted).  Where there is a facial attack, as there is here, a court must accept the complaint's well-pleaded allegations as true and review the allegations in light most favorable to the plaintiff.  *Manivannan v. U.S. Dep't of Energy*, 42 F.4th 163, 169 (3d Cir. 2022). To survive a Rule 12(b)(1) motion, the plaintiff must establish that jurisdiction exists.  *Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022).

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construe the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'"  *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

Plaintiff Hill makes two primary objections to Judge Teague's R&R, opposing his ruling that (1) Hill lacked Article III standing to bring a claim challenging VIPFA's procurement power and (2) Hill failed to allege sufficient facts to state a claim regarding VIPFA's arbitrary and capricious award of a contract to CH2M.  In support of its standing objection, Hill argues Judge

Teague failed to consider Third Circuit precedent and a V.I. territorial case that demonstrates standing is established in these types of cases, and misconstrued its prayers for relief.  To support its objection for the failure to state a claim ruling, it asserts it has properly pled a cause of action and established three adequate grounds for its claim that VIPFA conducted the bidding and award process in an arbitrary and capricious manner: (1) the price disparity between Hill and CH2M's bids, (2) the conflict of interest present in the evaluation committee, and (3) the provisions of the RFP which require a minimum award of two contracts.  The Court is not persuaded by these objections and approves and adopts the R&R.  The Court will now address each of Hill's objections and arguments in turn.

Hill's first objection asserts Judge Teague wrongly concluded Hill lacked standing to pursue its claim that VIPFA unlawfully exercised procurement powers which belonged exclusively to the V.I. Department of Property and Procurement ("P&P").  To establish standing, Hill "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "Traceability means that the injury was caused by the challenged action of the defendant . . . ."  *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 158 (3d Cir. 2022).  In his R&R, Judge Teague found Hill did not meet the traceability and redressability prongs of the standing test.  The Court finds Judge Teague correctly recommended dismissal of this claim for deficient standing because Hill has not met the traceability and redressability requirements under current Third Circuit precedent and the territorial law Hill cites is not binding or persuasive.

Hill claims Judge Teague did not properly consider Third Circuit precedent that gives it standing.  Hill cites two Third Circuit cases to support its argument: *Merriam v. Kunzig*, 476 F.2d 1233 (3d Cir. 1973) and *Sea-Land Serv., Inc. v. Brown*, 600 F.2d 429, 430 (3d Cir. 1979).  In

*Merriam*, the Third Circuit adopted the reasoning of *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 864 (D.C. Cir. 1970) to find "a bidder who has suffered sufficient injury in fact to meet the case or controversy test of Article III may, in pursuit of a vindication of that injury, assert not only his own rights but those of the public." 476 F.2d at 1240. And in *Sea-Land*, the court briefly reaffirmed *Merriam*'s standing while analyzing "whether the court could order the government to award the contract to a particular bidder." 600 F. 2d at 432.

As Judge Teague explains in his R&R, these cases state, "*a bidder who has suffered sufficient injury in fact to meet the case or controversy test of Article III* may, in pursuit of a vindication of that injury, assert not only his own rights but those of the public." R&R 13 n.15 (emphasis in original) (quoting *Merriam*, 476 F.2d at 1240). So, Hill must still prove a sufficient injury in fact. It cannot just allege it has standing based solely on the vindications of public rights because that only occurs after the plaintiff has alleged a sufficient injury. The Third Circuit in *Merriam* found "the destruction of a present and a future potentially profitable relationship with the Government" and the "loss of the costs incurred in preparing and submitting [a] proposal" to be sufficient injuries to justify standing. 476 F.2d at 1241. Hill has sufficient injury in fact on these two grounds.

But injury in fact, by itself, cannot establish standing. This injury must be "'fairly traceable to the challenged action of the defendant,' meaning . . . 'there must be a causal connection between the injury and the conduct complained of.'" *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). While *Merriam* did not discuss traceability in the standing context, the traceability of the injury to the defendant's conduct is clear. In *Merriam*, the disappointed bidder alleged the government awarded a contract to a bidder who met none of the criteria set forth in the solicitation. 476 F.2d at 1238. The disappointed bidder

also alleged that the criteria was based on an improper interpretation of a statute, and the government knew the winning bidder's responses to the solicitation were false which resulted in an arbitrary and capricious contract award. *Id.* If the government in *Merriam* had not conducted these allegedly illegal actions, then the bidder would not have suffered the loss of a relationship with the government or incurred proposal preparation costs.

In contrast, Hill's procurement power claim in this case has no analogous traceability. It is unclear how VIPFA conducting the contract procurement and bidding instead of P&P caused Hill to not be awarded the contract and to then suffer the damage to a potentially profitable relationship with the government and the loss of the costs incurred in preparing and submitting a proposal.

Additionally, neither *Merriam*, *Sea-Land*, nor any of the disappointed bidding cases in the Third Circuit that followed involve a claim of injury based on one agency conducting the bidding process instead of another one. *Merriam*, 476 F.2d at 1238 (involving an agency using improper criteria and disregarding defects in awardee bid during the solicitation process); *Sea-Land*, 600 F.2d at 430-31 (involving the Navy rescinding a bid contract and awarding it to a different bidder); *see, e.g.*, *Alpha Painting & Constr. Co. Inc. v. Del. River Port Auth. of Pa. & N.J.*, 853 F.3d 671, 681 (3d Cir. 2017) (challenging a government's bid award on the bases of internal guideline violations). These cases demonstrate that a disappointed bidder has standing in this Circuit if their claims involve illegal actions taken by an agency during the bidding process that directly injured the plaintiff's bid consideration. *See also Applications Rsch. Corp. v. Naval Air Dev. Ctr.*, 752 F. Supp. 660, 663-64 (E.D. Pa. 1990) (finding a disappointed bidder has standing to challenge the government for disregarding the terms of its solicitation to award another bidder the contract).

In its objections to the R&R, Hill reframes its injury as an "injury to its right to a legally valid procurement process." Pl.'s Obj. 3 (citing *Nat'l Mar. Union of Am. v. Commander, Mil. Sealift Command*, 824 F.2d 1228, 1237 (D.C. Cir. 1987); *Baltimore Gas & Elec. Co. v. United States*, 133 F. Supp. 2d 721, 726 (D. Md. 2001)). The cases Hill cites are not from the Third Circuit but from the D.C. Circuit and the District of Maryland.[4] While the Third Circuit did adopt some D.C. Circuit case law when it decided *Merriam*, it does not appear to have adopted this framing of the injury in a disappointed bidder case. *See, e.g.*, *Coco Bros. v. Pierce*, 741 F.2d 675, 676, 678 n.2 (3d Cir. 1984). The Court will not adopt this version of injury for disappointed bidders and will follow the definition outlined in *Merriam*.

Even if this Court were to adopt this version of disappointed bidder injury, the traceability issues still defeat Hill's standing to challenge VIPFA's procurement power. Under D.C. Circuit precedent, the right to a legally valid procurement process "does not relieve the plaintiff of the need to show a causal link between its loss and the agency's illegal conduct." *Energy Transp. Grp., Inc. v. Mar. Admin.*, 956 F.2d 1206, 1211 (D.C. Cir. 1992). Again, Hill cannot show how VIPFA managing the bidding process as opposed to P&P caused Hill to lose the award and incur damages.

---

[4]     Even in the D.C. Circuit case cited by Hill, the court there acknowledged traceability can defeat a disappointed bidder's standing. *Nat'l Mar. Union*, 824 F.2d at 1238 n.13 ("Moreover, when a disappointed bidder asks not for a re-solicitation but simply for rescission and an award of the original contract to it, there would be no redressability problem even if the bidder could allege only economic injury (although traceability of that injury to the alleged illegality might remain an insuperable barrier)."). The D.C. Circuit also acknowledges *Scanwell*, 424 F.2d 859 "was decided prior to the Supreme Court's focus, in cases like [*Warth v. Seldin*, 422 U.S. 490, 498 (1975)], on the causation element in the law of standing" and the D.C. Circuit has not previously given "attention to the meaning of the causation requirement in the procurement context." *Id.* Because *Merriam*, 476 F.2d 1233 relied on the *Scanwell* decision in its reasoning, it also lacks any meaningful discussion of the traceability requirement.

Hill argues the Court should adopt the Federal Circuit's formulation of traceability which states a disappointed bidder "need demonstrate only that if its bid had been fairly and honestly considered, 'there was a substantial chance that [it] would receive an award.'" *CACI, Inc.–Federal v. United States*, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983) (citations omitted). Under this standard, Hill does not have an established substantial chance of receiving the award in a bidding process undertaken by P&P. As Judge Teague correctly noted in his R&R, a solicitation and bidding process under P&P could result in an entirely different procedure being used or large modifications to the government's approach. R&R 14. The Court agrees with Judge Teague that any attempts to identify what Hill's chances of award in a new P&P led procurement would be too speculative. *Cf. Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 204 (D.C. Cir. 1984) (declining to grant a bid award of a contract based on speculations and assumptions on how the selection committee would have acted absent the illegal actions). Hill, therefore, fails the traceability prong of standing.

Hill next argues Judge Teague wrongly concluded it could not show redressability because he misconstrued its prayer for relief. Again, Hill frames the injury as a right to a legally valid procurement process. It claims the redressability would be satisfied by an injunction blocking the award of the contract to CH2M and effectively restarting the bidding process through P&P. As stated above, the Court will not follow this formulation of injury.

Hill's Complaint also does not just request an injunction blocking the award. Hill seeks declaratory judgment stating the failure to award the contract to Hill was unlawful. It also seeks an injunction to block VIPFA from contracting with any entity other than Hill. Hill argues these prayers for relief are allowed to be in tension with each other and the underlying theories behind its claims. It also claims any relief which declares the VIPFA's management of the bidding process as illegal and give Hill a legally valid procurement process will redress their injuries. But as stated

above, the injury is not traceable to VIPFA conducting the procurement instead of P&P, so it follows the requested relief cannot redress the stated injury. *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) ("Redressability is . . . 'closely related' to traceability, and the two prongs often overlap."). Even if Hill's redressability arguments are correct, it still faces the traceability issues highlighted above, defeating its standing for this procurement power claim.

Hill also argues Judge Teague improperly ignored *C & C/Manhattan v. Government of Virgin Islands*, 40 V.I. 51 (V.I. Terr. Ct. 1999). [5]  In *C & C*, V.I. Supreme Court Associate Justice Maria Cabret, who was then a trial judge on the Territorial Court, granted a preliminary injunction to halt a contract to build a prison because the P&P failed to follow its statutory duty to conduct the procurement itself and improperly used other actors and entities like VIPFA. *Id.* at 66-68, 73. Hill claims this Court should give weight to *C & C* because the case adopted and applied the Third Circuit standing test in *Merriam* and *Sea-Land* to a disappointed bidder in a procurement power award protest.

First, as Judge Teague correctly noted in his R&R, territorial law "cannot be relied upon to establish standing in this Court" because standing is determined by federal law. R&R 15 (quoting *Bryan v. Turnbull*, 291 F. Supp. 2d 386, 389 (D.V.I. 2003)). One decision of a territorial trial court, even by a current V.I. Supreme Court Justice is not binding on this court and can only provide persuasive value. Second, Hill's characterization of the *C & C* decision is an overexaggeration of the territorial court's use of Third Circuit precedent. In *C & C*, the court only cited to *Sea-Land Service* and *Merriam* when analyzing whether the plaintiff and the public at

---

[5]     At the time of the decision, Virgin Islands trial courts were called the Territorial Court of the Virgin Islands. *History of the V. I. Judiciary*, Judicial Branch of the U.S. Virgin Island, https://www.vicourts.org/about_us/overview_of_judiciary_of_the_virgin_islands/history_of_the _v__i__judiciary (last accessed December 22, 2025). The trial court was renamed in 2004 and is now referred to as the Superior Court of the Virgin Islands. *Id.*

large would suffer irreparable injury absent a preliminary injunction. *C & C*, 40 V.I. at 70-71. While the territorial court likely presumed the plaintiff in the case had standing, by virtue of it granting a preliminary injunction, it did not conduct its own standing analysis in the cited decision and certainly did not use Third Circuit precedent to do so. *See generally id.*

Additionally, the standing doctrine in Virgin Island territorial courts operates differently from federal Article III standing. *Compare V.I. Taxi Ass'n v. W. Indian Co., Ltd.*, 66 V.I. 473, 482 (V.I. 2017) ("[S]tanding, like the other doctrines stemming from the case-and-controversy requirements of Article III of the United States Constitution, functions as a claims-processing rule rather than a jurisdictional limitation on Virgin Islands courts."), *with V.I. Conservation Soc'y, Inc. v. V.I. Bd. of Land Use Appeals Golden Resorts LLLP*, 10 F.4th 221, 233 (3d Cir. 2021) ("Because Article III establishes the immovable bounds of our jurisdiction, we hold that a party appealing from the decision of a territorial court must establish Article III standing when invoking our jurisdiction."). So even if the court in *C & C* engaged in a standing analysis, it has little persuasive value in the Article III standing context. Because the *C & C* decision did not engage in a full federal standing analysis and is not binding on the court, Judge Teague committed no error when he did not directly address this case. Hill, therefore, does not have Article III standing to challenge VIPFA's authority to conduct this procurement because it has not established traceability or redressability.

Hill's next objection challenges Judge Teague's recommended dismissal of its claims on Rule 12(b)(6) grounds. Hill argues it has a territorial law cause of action to challenge a procurement decision and to enforce federal regulations. It also argues it has sufficiently alleged facts for its claim that (1) the price disparity between Hill and CH2M's bids, (2) the conflict of interest present in the evaluation committee, and (3) the provisions of the RFP which require a

11

minimum award of two contracts show VIPFA acted in an arbitrary and capricious manner when conducting the bidding process.  These arguments are not persuasive.

Hill argues Judge Teague erroneously held that Hill did not have a cause of action to challenge a procurement decision or to enforce federal regulations.  Pl. Obj. 7-12.  Hill overstates Judge Teague's holding in the R&R.  Judge Teague recommended dismissing Count I and II of the Complaint since they sought declaratory and injunctive relief without asserting any specific causes of action.  R&R 18-21.  He later addressed the merits of Hill's claims to the extent Count III, pleading a Virgin Island taxpayer suit, provides declaratory and injunctive relief.  *Id.* at 20 n.21, 21-34.  Even if Hill does have a cause of action under territorial law, its procurement power claim fails for standing purposes as stated above and its other claims fail for failure to state a claim under Rule 12(b)(6).

Hill next argues against the dismissal of its bid price disparity claim because the large price difference between Hill and CH2M's bids on its face demonstrates a plausible claim.  Pl. Obj. 12-14.  And Hill also argues VIPFA used an unstated price realism criteria during the evaluation process.  *Id.*  In his R&R, Judge Teague found Hill has not pled sufficient facts from which the Court can reasonably infer the award to CH2M was arbitrary and capricious based on price disparity because the only fact Hill alleged was the $107 million price difference between its bid and CH2M's winning bid.  R&R 31-32.  He determined the RFP constituted a best value procurement which did not require VIPFA to choose the lowest bidder.  *Id.* at 32-34.  The Court also finds this RFP was a best value procurement and that Hill has not alleged sufficient facts to show the award was arbitrary and capricious based on price alone.

"It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when . . . the contract is to be awarded to the bidder or

bidders that will provide the agency with the best value." *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1355 (Fed. Cir. 2004). This "discretion necessarily includes the option of selecting a higher-priced proposal over a lower-priced proposal, when the technical aspects of the higher-priced proposal outweigh the difference in price." *DynCorp Int'l LLC v. United States*, 76 Fed. Cl. 528, 541 (2007) (citing *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 960 (Fed. Cir. 1993)).

On the face of the RFP, VIPFA engaged in a best value procurement whose evaluation criteria weighed technical ability far heavier than price. RFP 21, Dkt. No. 48-2.[6] The Court has found no case law where a best value procurement was found to be arbitrary and capricious based on bid price disparity alone. *See, e.g.*, *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 908 (Fed. Cir. 2013) (finding a contracting officer's award to a higher price proposal was not arbitrary or capricious because the decision "was consistent with the [s]olicitation, which expressly stated that non-price factors were significantly more important than price"). Hill cannot plausibly allege a claim here by only alleging a price disparity.

Hill argues Judge Teague improperly relied on information outside the complaint to find its price disparity claim is not plausible. Pl.'s Obj. 12.[7] Hill, however, urges the Court to consider a declaration filed outside of the Complaint a few pages later in its Objections. *Id.* at 13-16. Hill argues VIPFA engaged in a price realism analysis, "an analysis used to determine whether a bid price is 'unreasonably low'" and this was not disclosed by VIPFA in either the RFP or the Evaluation Report. *Id.* at 12-14. Hill asserts this unstated or undisclosed criteria makes the award

---

[6]    The RFP is incorporated by and attached to Hill's Complaint. Compl. ¶ 8.

[7]    The argument is unfounded because the R&R relied on the text of the RFP and the Evaluation Report issued after the award which are both cited by and attached to the Complaint. Compl. ¶¶ 8, 19.

to CH2M arbitrary and capricious. *Id.* at 14 (citing *Onesimus Def. LLC v. United States*, 173 Fed. Cl. 344, 357 (2024); *Tip Top Constr. Corp. v. Gov't of Virgin Islands*, 60 V.I. 724, 736-38 (V.I. 2014)). In making this argument, Hill points to a sworn declaration signed by a member of the Evaluation Committee, Virgin Islands Department of Public Works's ("DPW") Chief Engineer, Tawana Nicholas which was submitted by VIPFA in opposition to Hill's Motion for Preliminary Injunction. *Id.* at 13.

In this declaration Nicholas states the Evaluation Committee did not select Hill for an award because (1) Hill's "labor mix . . . was insufficient to meet the Construction Management portion of the RFP"; (2) the proposal "was not sufficiently detailed . . . , and failed to . . . demonstrate that [Hill] would be ready to initiate performance on day one"; and (3) Hill did not "propos[e] sufficient resources (i.e. boots on the ground) to perform the scope of work" which caused the committee to be concerned that "VIPFA would be required to fill these gaps in Hill's proposal with respect to the Construction management scope of work, or alternatively that Hill would ultimately seek change orders requesting a price increase." Pl.'s Reply Mot. TRO 19, Dkt. No. 47 (citing VIFPA Opp. Mot. TRO 15-16, Dkt. No. 32; Nicholas Decl. ¶ 13, Dkt. No. 32-11). Nicholas states these concerns were discussed during the "technical evaluation" review. Nicholas Decl. ¶ 13.

First, this unstated price realism criteria claim was not alleged in Hill's Complaint. In the Complaint, Hill alleges VIPFA was arbitrary and capricious by selecting CH2M's bid which had an over $106 million price disparity from Hill's bid. Compl. ¶ 31. It did not allege that VIPFA relied on information not disclosed in the RFP. This is a new claim that relies on information not incorporated by or attached to the Complaint. Because "the complaint may not be amended by the briefs in opposition to a motion[,]" Judge Teague was correct in disregarding this new argument.

*Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Commonwealth of Pennsylvania. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

Second, even if Hill could bring this unstated price realism criteria claim, it would still fail. The statements in Nicholas' declaration do not plausibly indicate a price realism analysis was used as an unstated criterion. "To prevail on an unstated evaluation criteria claim, a plaintiff must show that the agency used a significantly different basis in evaluating the proposals than was disclosed and that it has been prejudiced as a result." *Onesimus*, 173 Fed. Cl. at 357 (internal citations and quotation marks omitted). "[A] price realism analysis considers whether an offeror's price is too low, such that it indicates a risk of poor performance and a lack of understanding of the solicitation requirements." *UnitedHealth Mil. & Veterans Servs., LLC v. United States*, 132 Fed. Cl. 529, 554 (2017) (citation omitted).

The statements Hill cites to do not indicate the committee thought the price Hill proposed was too low which caused it to negatively assess its bid. Instead, the statements indicate a concern with Hill's allocation of labor and resources in addition to the lack of detail in the construction management portion of the proposal. These concerns are not the primary focus of a price realism analysis. Price realism analysis focuses on evaluating the *price* of items and resources allocated to a project not whether the quantity of those resources is sufficient to complete the contract. *Afghan Am. Army Servs. Corp. v. United States*, 90 Fed. Cl. 341, 358 (2009) (listing various methods of price realism analysis such as "comparison of the prices received with each other; comparison of previously proposed prices for the same or similar items; comparison with the independent government estimate; and analysis of pricing information provided by the offeror."). While the allocation of resources and the price of a bid are related, the committee's concerns are

about Hill's ability to complete the contract compared to the price offered by Hill.  The facts do not support Hill's claim that price realism analysis was used.

Hill's unstated criteria arguments also fail because the rationale for rejecting Hill's proposal is consistent with the explicit text of the RFP and Evaluation Report.  The cited statements clearly used a criteria that was disclosed in the RFP and Evaluation Report.  The RFP states a proposal will be evaluated for its "Technical Approach and Methodology" which includes assessing the "[s]trategy described in proposal" and the bidder's "[c]apability demonstrated to perform."  RFP 21.  The RFP also states "[c]ost effectiveness" will be considered which includes "determining reasonable cost for [labor, tools, materials, equipment, miscellaneous, supplies and other costs]."  *Id.*; Enclosure Doc. F, Dkt. No. 48-2 at 29.  Concerns about whether Hill's proposal adequately provides enough labor and resources with sufficient detail falls directly under these provisions.  These concerns are also reflected in the Evaluation Report.  The Evaluation Report states Hill did well during the evaluation but "their project management strengths surpassed their construction management capabilities, leading to a disadvantage for them."  Evaluation Rpt. 2, Dkt. No. 32-16.  While this explanation is not detailed, it is consistent with the committee's stated issue with Hill's proposal: Hill's deficient construction management services.  Because Hill has not alleged sufficient facts and alleges a claim not in the Complaint, Hill's price disparity claim and any unstated price realism criteria claim fail.

Hill also argues the dismissal of its conflict of interest claim was erroneous.  It alleges three of the five members of the evaluation committee, responsible for awarding the contract, were employed by DPW while two employees of CH2M's parent company Jacobs Solutions, Inc. were also working for DPW at the time of the award.  Compl. ¶ 24.  Hill states this fact creates "an

impermissible conflict of interest." *Id.*  In his R&R, Judge Teague found Hill does not provide sufficient facts to allege a plausible conflict of interest claim.  The Court agrees with this analysis.

The only fact Hill pleads is that two employees of CH2M's parent company worked at the same government agency as three members of the evaluation committee.  In the bidding procurement context, "a protester must identify 'hard facts'; a mere inference or suspicion of an actual or apparent conflict is not enough."  *PAI Corp. v. United States*, 614 F.3d 1347, 1352 (Fed. Cir. 2010) (citations omitted).  As Judge Teague rightfully points out, Hill does not allege the evaluation committee members and these employees worked together, exchanged information, or in any way improperly influenced each other.  R&R 30.  Hill's allegation is only supported by "mere conclusory statements" and speculation.  *Iqbal*, 556 U.S. at 678; *see, e.g.*, *Turner Const. Co. v. United States*, 645 F.3d 1377, 1387 (Fed. Cir. 2011) (affirming the dismissal of a conflict of interest claim in the bidding context because the "inference that some unnamed . . . employees 'may have had access' to unidentified information" does not allege sufficient facts for the claim).

In its objections and response briefings, Hill attempts to support its conflict of interest claim by alleging "DPW is receiving a benefit from the work being performed by the Jacobs employees" and the "value of that benefit *could* be very high."  Pl.'s Obj. 17 (emphasis added).  It also states the presence of these employees working where three of the evaluation committee members worked "creates a very real *risk* that those employees learned confidential information" and Jacobs has published posting for jobs intended to staff the contract award to CH2M.  *Id.*  (emphasis added).  Notably, none of these allegations are in Hill's Complaint.  Even if the Court were to consider these allegations made outside of the Complaint, the substance of them still consists of mere inferences or suspicion.  Hill still only speculates that something *may* have occurred because these five individuals worked at the same agency.

17

Hill claims this standard improperly demands proof of conduct which shows a conflict of interest. This is incorrect. The motion to dismiss requirement does not demand proof but does demand well-pleaded factual allegations which if true can succeed on a legal claim. *Thanoo*, 999 F.3d at 904. So, Hill has failed to plead sufficient facts for its conflict of interest claim.

Hill finally argues Judge Teague erred in recommending the dismissal of the claim that VIPFA's award of less than two contracts was arbitrary and capricious. Hill alleges the RPF stated "a minimum of two contractors would be selected" so VIPFA was arbitrary and capricious when it awarded only one contract to CH2M. Compl. ¶¶ 9, 31 (citing RFP 2). Judge Teague recommends dismissing this claim because it found the RFP allowed for a single or multiple award(s), Hill's failure to challenge any ambiguity in the RFP terms constitute acceptance of all terms, and Hill waived this issue by failing to raise it pre-award. R&R 28-29. Hill opposes each of these grounds. The Court agrees with Judge Teague on each ground for dismissal of this claim.

Judge Teague found Hill waived its ability to challenge a patent ambiguity in the solicitation based on a Federal Circuit case, *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007). *Blue & Gold* held "that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action . . . ." *Id.* at 1313. Judge Teague conducted a *Banks* analysis to apply the *Blue & Gold* waiver rule.[8] R&R 27-28 & n.28. After conducting the analysis, he concluded the V.I. courts had

---

[8] When there is no Virgin Islands Supreme Court precedent on a common law rule, courts in the Virgin Islands conduct a "*Banks* analysis" to determine which legal standard to adopt. *Clarke v. Marriott Int'l, Inc.*, 403 F. Supp. 3d 474, 484 n.4 (D.V.I. 2019). To conduct a *Banks* analysis, the court "balances 'three non-dispositive factors': '(1) whether any [local or federal] courts [in the Virgin Islands] have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents

not previously applied the *Blue & Gold* waiver rule or a similar rule, but numerous courts from the Court of Federal Claims, Arizona, Guam, Washington, Iowa, Minnesota, District of New Hampshire, and District of Wyoming have adopted a waiver rule.  *Id.* at 27-28 n.28 (collecting cases).  He also found the public policy and fairness concerns underlying the waiver rule counsel the Virgin Islands to adopt the rule.  *Id.*

Hill opposes Judge Teague's use of the *Blue & Gold* waiver rule in his R&R to bar its claim regarding the two-award minimum in the RFP.  Hill argues he erroneously performed the *Banks* analysis by specifically ignoring *C & C*, 40 V.I. 51 and *Tip Top*, 60 V.I. 724 which highlighted the policy importance of maintaining public confidence in the procurement process.  This argument seems to be attacking the third factor of the *Banks* analysis: "which approach represents the soundest rule for the Virgin Islands."  *Clarke*, 403 F. Supp. 3d at 484 n.4.

Again, Hill places too much weight on the *C & C* decision.  *C & C* is a nonprecedential V.I. Territorial Court decision from over 25 years ago.  Additionally, the *C & C* decision only addressed the public confidence in procurement when analyzing the irreparable injury and public interest factors to decide whether a preliminary injunction is warranted.  40 V.I. at 12.  The *Tip Top* decision was also made in the context of a motion for preliminary injunction and the V.I. Supreme Court did not conduct its own comprehensive analysis of the issue.  60 V.I. at 739. Notably, these findings were made after the courts had decided the plaintiff is likely to succeed on the merits of its claim.  *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994) ("As a practical matter, if a plaintiff demonstrates both a likelihood of

---

the soundest rule for the Virgin Islands.'" *Id.* (quoting *Gumbs-Heyliger v. CMW & Assocs. Corp.*, 73 F. Supp. 3d 617, 625 (D.V.I. 2014)) (internal citation omitted) (alteration in original).

success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.").

While some Virgin Islands cases do emphasize the importance of ensuring integrity in the procurement process, other cases also give substantial weight to the importance of expeditious resolution of the bidding process. *See, e.g.*, *Marco St. Croix, Inc. v. V.I. Hous. Auth.*, 62 V.I. 586, 593 (V.I. 2015); *Tires v. Gov't of Virgin Islands*, 68 V.I. 241, 257 (V.I. Super. Ct. 2018); *V.I. Taxi Ass'n*, 66 V.I. at 500 ("Litigation aimed at second-guessing the exercise of discretion by the appropriate public officials in awarding a public contract will not further the public interest; it will only add uncertainty, delay, and expense to fulfilling the contract." (quoting *Groves v. Dept. of Corr.*, 811 N.W.2d 563, 568 (Mich. Ct. App. 2011))). The holding in these cases matches the rationale of the *Blue & Gold* waiver rule which aims to "prevent[] contractors from taking advantage of the government and other bidders, and avoids costly after-the-fact litigation." *Blue & Gold*, 492 F.3d at 1314. This Court agrees with Judge Teague's *Banks* analysis because of the policy and fairness concerns underlying the *Blue & Gold* waiver rule and applies the rule to this case.[9]

Hill also asserts the RFP was not patently ambiguous regarding the number of contracts VIPFA was required to award.[10] It argues Judge Teague erroneously relied on one of VIPFA's responses to a question about the number of awards that would be issued. The question asked,

---

[9]    As Judge Teague correctly notes, the *Blue & Gold* waiver rule also bars Hill's challenge to VIPFA's procurement power because it brought the challenge post-award. R&R 28 n.29 (citing *Navarro Rsch. & Eng'g, Inc. v. United States*, 94 Fed. Cl. 224, 234 (2010)).

[10]    Hill also argues if the *Blue & Gold* waiver rule does not apply, then the RFP's ambiguities should be construed against the drafter to show the RFP required a minimum of two awards. Pl.'s Reply Obj. 19. The Court does not need to address this argument since it has found the *Blue & Gold* waiver rule applies in this matter.

"[i]s there a maximum number of contractor awards the ODR will issue for the Project Management or Delivery and Construction Management Services?" RFP Addendum No. 3 at 8, Dkt. No. 48-3.[11] VIPFA responded "ODR reserves the right to determine the number of contractor awards." *Id.* Hill states the question and response only indicate that VIPFA can choose the maximum number of awards but has a minimum requirement of awarding two contracts. First, Hill's objections do not address the other ambiguous provisions Judge Teague cites to demonstrate patent ambiguity as to the minimum number of contracts the RFP requires.[12] Second, the plain language of the response to the question indicates VIPFA has the right to award any number of contracts including one. Third, even assuming the interpretation of the question and response can arguably be interpreted either way, this fact further demonstrates the existence of a patent ambiguity. The Court finds the RFP shows a patent ambiguity and thus the *Blue & Gold* waiver applies to bar Hill's claim.

Hill further argues the *Blue & Gold* waiver only requires a bidder seek clarification about an ambiguous term in the RFP and it was a disputed matter whether Hill had sought clarification which requires factual development in discovery or a hearing. Pl.'s Opp. Mot. to Dismiss 19-20 (citing *MCI Diagnostic Ctr., LLC v. United States*, 147 Fed. Cl. 246, 279 (2020)). As Judge Teague correctly stated in his R&R, Hill cannot plausibly claim it requires discovery to identify if *itself* had or had not sought clarification about the ambiguous terms. Hill has not pled in its

---

[11]    Addendum No. 3 was made part of the RFP and therefore is also incorporated by the Complaint. *See* RFP Addendum No. 3 at 1.

[12]    The R&R cites to Section 8.0 of the RFP which states "ODR may have a single or multiple Prime Contractor(s) as the result of any contract negotiation," Section 20.0 which states "ODR, at its sole discretion, will determine which Proposal best satisfies its requirements," and Section 26.0, which states "ODR reserves the right to enter into a contract(s) based on the initial offers received . . . [and] the right to contract for all or a partial list of services offered in the proposals." R&R 23-24 (citing RFP 12, 22, 23).

Complaint or represented in its briefings any facts to show it had made any clarifications or pre-award objections.

Hill finally argues even if the *Blue & Gold* waiver rule applies, this does not defeat its claim at the motion to dismiss stage because plaintiffs are generally not required to plead facts to rebut affirmative defenses like waivers. Pl.'s Obj. 19 (citing *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014)). However, the Federal Circuit, where the *Blue & Gold* waiver rule originates, finds granting a motion to dismiss appropriate when a disappointed bidder undisputably falls under the waiver rule. *M.R. Pittman Grp., LLC v. United States*, 68 F.4th 1275, 1284-85 (Fed. Cir. 2023) ("[W]e agree with the trial court that [plaintiff] waived its protest grounds under the *Blue & Gold* waiver rule. . . . [T]he judgment of the Court of Federal Claims is affirmed . . . for failure to state a claim[.]"); *see, e.g.*, *Int'l Mgmt. Servs., Inc. v. United States*, 80 Fed. Cl. 1, 9 (2007) (finding a plaintiff has failed to state a claim upon which relief can be obtained because of the *Blue & Gold* waiver).[13] As a result, the *Blue & Gold* waiver rule can be the basis for granting a motion to dismiss.

In the event this Court adopts the R&R, Hill requests the Court remand the procurement power claim to the V.I. Superior Court and grant it leave to amend its other claims. This Court will dismiss Hill's procurement power claim without prejudice and dismiss Hill's other claims with prejudice. The Court will dismiss the procurement power claim without prejudice because it

---

[13]    In the Court of Federal Claims, motions to dismiss for failure to state a claim are governed under Rule of the United States Court of Federal Claims 12(b)(6) which appear to be substantially identical to Federal Rule of Civil Procedure 12(b)(6). *See Int'l Mgmt. Servs., Inc.*, 80 Fed. Cl. at 4 ("If the court finds that it possesses jurisdiction to entertain one or all of plaintiff's claims, it still must dismiss, pursuant to RCFC 12(b)(6), any claim where the factual allegations do not "raise a right to relief above the speculative level . . . ." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

lacks subject matter jurisdiction on standing grounds.[14] *Ellison v. Am. Bd. of Orthopaedic Surgery*, 11 F.4th 200, 209 (3d Cir. 2021) ("We have noted that '[b]ecause the absence of standing leaves the court without subject matter jurisdiction to reach a decision on the merits, dismissals "with prejudice" for lack of standing are generally improper.'" (alteration in original) (quoting *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 n.7 (3d Cir. 2017))).

The Court, however, will not grant leave to amend Hill's claims regarding the price disparity, conflict of interest and two-award minimum because it would be futile. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend [is] . . . futility."). Hill would not be able to plead a plausible claim for relief based on the facts. Because any attempt at amending these claims would be futile, the Court will dismiss them with prejudice.

**CONCLUSION**

Because Hill does not have standing to challenge VIPFA's procurement power and has failed to state a plausible claim for the rest of its claims, Hill's Objections are overruled, the R&R is approved and adopted, and VIPFA's Motion to Dismiss is granted.

An appropriate Order follows.

---

[14]    The Supreme Court and Third Circuit have not decided whether a partial remand of claims is permissible or requited. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998) (observing one could read § 1447(c) to require remand "only of the relevant claims," but not the entire case); *Am. Cap. Acquisitions Partners LLC v. Fortigent LLC*, 595 F. App'x 113, 117 (3d Cir. 2014) (discussing but not deciding the "open question" of whether a court should remand a claim for lack of standing instead of dismissing it). Other circuits have indicated this type of remand is permissible when a plaintiff lacks standing for a claim. *Fortigent*, 595 F. App'x at 117 (discussing *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1044 (D.C. Cir. 2010) and *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1006 (9th Cir. 2001)). This Court does not need to rule on this issue and instead will dismiss this claim without prejudice so Hill can pursue its procurement power claim in V.I. Superior Court. *Lee*, 260 F.3d at 1006 ("Whether the district court dismisses the [standing-deficient] claims, or [plaintiff] dismisses them voluntarily, there should be no obstacle to . . . refiling them in state court.").

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.